FILED
2006 AUG 14 AM 10:42
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: | Case No. 05-10521 |
| KARL EDWIN MAY,<br>    Debtor. | Chapter 7 |
| | Adversary Proceeding No. 05-1098 |
| PRIM CAPITAL CORP.,<br>    Plaintiff, | Judge Arthur I. Harris |
| v. | |
| KARL EDWIN MAY,<br>    Defendant. | |

## MEMORANDUM OF OPINION

Before the Court is the defendant-debtor's motion for summary judgment (Docket #72), the plaintiff's response (Docket #79), and the defendant-debtor's reply (Docket #82). At issue is the dischargeability of a debt owed to the plaintiff. For the reasons that follow, the defendant's motion for summary judgment is granted.

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTS

The following facts are not in dispute. The debtor, Karl May, an attorney, represented plaintiff Prim Capital Corporation ("Prim") from 1997 until 2003, serving as general counsel to Prim from 2000 until 2003. In late 2000, Prim obtained a one-year, $100,000 loan from Huntington National Bank. The proceeds of the loan went directly to May. May had told Joseph Lombardo, Prim's CEO, that he needed the loan to pay a substantial tax obligation. The details of this arrangement – *i.e.*, who was the primary obligor on the loan and who, if anyone, was a secondary obligor or guarantor – are murky, but it appears that May was obligated in some fashion to repay the proceeds to either Huntington or Prim within a year.[1]

May failed to repay the proceeds on time. In September 2002, the first loan was paid with the proceeds of a second Huntington loan. May was the primary obligor on the second loan, with Prim, Lombardo, and other principals of Prim acting as guarantors. May made some payments on this second loan, but ultimately Lombardo, as guarantor, repaid the loan in 2004 after Huntington had obtained judgment against both May and Lombardo.

---

[1] May asserts that his obligation to repay this loan was contingent on fees he received from Prim and from clients referred to him by Prim.

## PROCEDURAL BACKGROUND

Prim brought suit in state court to recover the money Lombardo paid to Huntington.[2] During the course of this litigation, May filed his Chapter 7 petition on January 16, 2005, and received a discharge on November 8, 2005.

On February 25, 2005, Prim commenced this adversary proceeding alleging that May's debt to Prim is nondischargeable under 11 U.S.C. § 523(a)(2) and (a)(6). Prim did not properly request a summons until May 24, 2005, and thus did not serve May until June 2005. May moved to dismiss the complaint for failure to state a claim and for failure to plead with particularity, as required by Rule 9 of the Federal Rules of Civil Procedure. Finding that the complaint did not meet the requirements of Rule 9, the Court ordered Prim to amend its complaint. Prim filed an amended complaint on August 19, 2005. May filed another motion to dismiss. May also moved to disqualify Prim's counsel because Prim's counsel was simultaneously May's counsel of record in a foreclosure case. Prim requested additional time to respond to the motion to dismiss and eventually responded on September 28, 2005.

---

[2]Apparently, Lombardo's payment was construed as a loan to Prim, and Prim actually paid Huntington. Otherwise, Prim would not have standing to bring either the state court suit or this adversary proceeding. Prim did not clarify this until it filed its response to the motion for summary judgment, nearly fifteen months after filing the adversary complaint.

On October 5, 2005, the parties jointly requested an extension of the discovery deadline. The Court held two hearings on the motion to disqualify, and on November 9, 2005, the Court granted the motion and ordered new counsel to file a second amended complaint. Prim filed its second amended complaint (Docket #42) on December 7, 2005. May filed his answer to the second amended complaint (Docket #44) on December 23, 2005, and another motion to dismiss on December 28, 2005. The Court denied the motion to dismiss and issued a new scheduling order on February 2, 2006. Discovery was to end on March 15, 2006, and trial was set for June 28, 2006.

On March 24, 2006, after the close of discovery, Prim moved for an order compelling May to produce additional documents relating to his financial condition in the years 2000 through 2002. May objected, and a telephonic conference was held on April 24, 2006, during which the Court indicated that discovery was closed and no further discovery would be ordered or permitted.

On April 13, 2006, May filed his motion for summary judgment (Docket #72). Prim requested additional time to respond and was given until May 15, 2006. Prim filed its response (Docket #79) on May 15, 2006, and May replied (Docket #82) on May 25, 2006. The Court postponed the June 28, 2006, trial and is now ready to rule on the motion for summary judgment.

SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997); *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will view the

5

evidence in a light most favorable to the nonmoving party. *See Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

Federal Rule of Civil Procedure 56(e) provides:

> Where a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*See also Celotex Corp.*, 477 U.S. at 324 ("[R]ule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.' ") (citation omitted).

## DISCUSSION

Subsection 523(a) of the Bankruptcy Code provides that "A discharge under section 727 . . . does not discharge an individual debtor from any debt —

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
>   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>   (B) use of a statement in writing —
>     (i) that is materially false;
>     (ii) respecting the debtor's or an insider's financial condition;

6

> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive . . . .

Subsections 523(a)(2)(A) and (B) are

> two close statutory companions barring discharge. One applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition), the other when the debt follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied.

*Field v. Mans*, 516 U.S. 59, 66 (1995). In other words, whether subsection 523(a)(2)(A) or subsection 523(a)(2)(B) applies depends on whether the alleged fraud or falsity goes to the debtor's financial condition.

Courts are divided on the meaning of "a statement respecting the debtor's or an insider's financial condition." *See In re Bogdanovich*, 292 F.3d 104, 112 (2d Cir. 2002) (collecting cases).

> Two views have emerged over how to interpret the scope of § 523(a)(2)(A)'s exception. A broad interpretation would include any statement that reflects the financial condition of the debtor. On the other hand, a narrow interpretation would find that a statement relates to financial condition only when it provides information 'as to [a debtor's] overall financial health.'

292 F.3d at 112 (quoting *Norcross v. Ransford (In re Ransford)*, 202 B.R. 1, 4 (Bankr. D. Mass. 1996)).

7

### A. Prim's Seconded Amended Complaint

In the present case, the Court does not have to determine whether a narrow or a broad interpretation is more correct. The false statements alleged in the second amended complaint either fall squarely within the narrow interpretation or do not relate in any way to the debtor's financial condition.

In the second amended complaint Prim alleges that May said he needed the loan to pay a substantial tax obligation and that he would be able to repay the loan because he expected to receive a large settlement from another case.[3] Statements regarding a tax debt and an upcoming cash infusion from a large settlement clearly provide information "as to [a debtor's] overall financial health," so subsection 523(a)(2)(B) applies. It is undisputed, however, that May's statements concerning the tax obligation and alleged statements concerning a potential settlement were not made in writing. A writing is the *sine qua non* of subsection 523(a)(2)(B)

---

[3] In his deposition, May denied that he ever mentioned a potential settlement, and Prim seems to have abandoned this theory in its response to the motion for summary judgment. In its response Prim seems to concede that May did owe a large tax bill and that he used at least a portion of the loan proceeds to pay some of it. In his deposition and affidavit, May claims that he received no salary from Prim nor from a law firm he was associated with when he became Prim's general counsel. In addition to the tax bill, May asserts that he also needed the loan to cover living expenses until he began collecting legal fees from Prim and other clients. Lombardo's affidavit confirms that May did not receive any salary when he became general counsel. Prim put forth no evidence that May made any representations regarding a settlement.

8

nondischargeability. Thus, Prim cannot maintain a 523(a)(2)(B) claim on the basis of these statements.

Prim also alleges that May falsely represented that he would offer his house as collateral for the second loan. This statement does not concern May's financial condition, so subsection 523(a)(2)(A) applies. But, Prim has put forth no evidence in support of this allegation and makes no mention of this claim in its response to the motion for summary judgment. In his deposition, May denied making any such representation. Thus, viewing the evidence in a light most favorable to Prim, there is no genuine issue of material fact that May ever stated that he would offer his house as collateral for the second loan.

Therefore, May is entitled to judgment as a matter of law on the nondischargeability claim as pleaded, and the motion for summary judgment is granted.

*B. Prim's Response to the Motion for Summary Judgment*

In its response to May's motion for summary judgment, Prim advances a new theory of nondischargeability under subsection 523(a)(2)(B). Prim alleges that May gave Huntington Bank false financial statements when each loan was made. The second amended complaint contains no reference to any false financial statements or any other statement made by May to Huntington; it refers only to

9

allegedly false statements made by May to Prim. Prim has not moved to amend its complaint to include this new theory and to allege the new facts that would support it. May objects to this new theory because it is based on documents outside the scope of discovery, and because it has been advanced too late in the proceedings and subjects May to unfair surprise. The Court agrees.

"[T]he fundamental tenor of the Rules [of Civil Procedure] is one of liberality rather than technicality." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001). The rules require only that pleadings place parties on notice of potential claims and defenses with "short and plain" statements of the claims and defenses and with "simple, concise, and direct" averments. "All pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f). The discovery rules are flexible and permit discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b). If, in the course of discovery, new claims or defenses come to light, a party may move to amend its pleading, and a Court must freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15. Thus, the rules grant parties latitude to fine-tune their arguments so that the issues and facts are well-developed when the court is called upon to enter judgment on the merits.

Once the court is called upon to enter judgment on the merits, on a motion

for summary judgment, for instance, the liberal pleading standards are no longer applicable. *See Tucker v. Union of Needletrades, Industrial, & Textile Employees*, 407 F.3d 784 (6th Cir. 2005) (affirming a grant of summary judgment in which the district court refused to consider an unpleaded estoppel theory first advanced in response to a motion for summary judgment); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion). Instead, a plaintiff wishing to assert a new basis of recovery should amend the complaint. *See* 10A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2006).

Prim has not sought to amend its complaint. The second amended complaint makes no mention of any statements by May to Huntington, nor does it mention any right of subrogation, which Prim now claims. Moreover, May asked Prim, in interrogatory number 3, to "describe in detail all 'false statements' attributed to May . . . ." Prim did not mention the financial statements in its response. But, Prim did introduce the financial statements at May's March 6, 2006, deposition, so Prim had the financial statements in its possession prior to the close of discovery on March 15, 2006, and well in advance of the May 15, 2006, deadline for filing its response to May's motion for summary judgment. May's

11

motion for summary judgment was predicated on the allegations found in the complaint. Rather than respond to May's arguments set forth in the motion, Prim responded with an entirely new theory of recovery that is based on facts not alleged in the complaint. Therefore, Prim's new theory based on the financial statements is not properly before the Court, and the Court declines to consider it. May's motion for summary judgment is granted on the basis of the facts and claims contained in the second amended complaint.

Even assuming that Prim's new theory should be considered, the Court would still grant May's motion for summary judgment because Prim's theory is flawed and because there is no genuine issue of material fact regarding reasonable reliance on either of these financial statements.

*1. Subrogation Under 11 U.S.C. § 509*

Prim argues that it paid Huntington and is thus is subrogated to the rights of Huntington under 11 U.S.C. § 509 such that it may assert any nondischargeability claim against May that Huntington could have asserted. Section 509 covers "Claims of codebtors" and provides in pertinent part:

> (a) . . . [A]n entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim is subrogated to the rights of such creditor to the extent of such payment.

Before attempting to parse this language, it is best to review the fundamentals. A

12

"creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (2004). A "claim" is simply a "right to payment." 11 U.S.C. § 101(5)(A). A voluntary case under Title 11 "is commenced by the filing . . . of a petition . . . . The commencement of a voluntary case . . . constitutes an order for relief . . . ." 11 U.S.C. § 301. Thus, a creditor is an entity that has a right to payment that arose at the time or before the date of the petition.

Section 509 provides only for the subrogation of "codebtors," *e.g.*, guarantors, to the rights of "creditors." In order for a guarantor to exercise subrogation rights under section 509, the guarantor must pay the claim of a "creditor," an entity that has a right to payment as of the petition date. In other words, the payment giving rise to the subrogation rights must be made postpetition. Otherwise, there is no creditor to whom the guarantor may be subrogated purposes of section 509 because a prepetition payment extinguishes any right to payment that the original obligee would have had on the petition date. If a guarantor pays the original obligee prepetition, then the guarantor would pursue its claim against the debtor in its own right. The guarantor, for the purposes of the Bankruptcy Code, is now the creditor because the guarantor now has a "right to payment" as of the petition date, and subrogation under section 509

13

is not available. *See In re Chateaugay Corp.*, 89 F.3d 942, 948 (2d Cir. 1996) (noting that § 509(a) applied to surety's claim because the surety paid the claim postpetition); *Stephenson v. Salisbury (Matter of Corland Corp.)*, 967 F.2d 1069, 1078 (5th Cir. 1992) (noting that § 509 only has meaning in context of a postpetition payment); *see also In re Magisano*, 228 B.R. 187, 194 n.3 (Bankr. S.D. Ohio 1998) (expressing doubt that a creditor seeking to enforce a contribution claim that arose prepetition could assert subrogation rights under section 509); *In re Four Star Constr. Co.*, 151 B.R. 817, 820 (Bankr. N.D. Ohio 1993) ("Where a surety pays the principal debt in full, § 509(a) applies only when such payment is made by the surety [postpetition]."). *See generally* 4 Collier on Bankruptcy ¶ 509.02[3] (15th ed. rev.).

That section 509 applies only to postpetition payments to creditors by codebtors is further borne out by section 509's context and legislative history. First, section 509 must be read in conjunction with the other provisions of Subchapter I of Chapter 5. Those provisions, taken together, "provide the framework for the difficult division of scarce assets among competing claimants." 4 Collier on Bankruptcy ¶ 509.01. Specifically, 11 U.S.C. § 502(e)(1) provides:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that–

14

  (A) such creditor's claim against the estate is disallowed;
  (B) such claim for reimbursement or contribution is contingent . . .; or
  (C) such entity asserts a right of subrogation to the rights of such
creditor under section 509 of [Title 11].

Section 502, the principal section governing allowance of claims, contemplates the operation of section 509 only in those situations where an entity's claim against the debtor is premised on that entity's payment of a creditor in bankruptcy, *i.e.*, a postpetition payment. *See* S. Rep. 95-989 at 73 (1978) (describing section 509 as being "in addition to the disallowance provision in section 502(e)").

Second, the legislative history notes:

> [Section 509] is based on the notion that the only rights available to a surety, guarantor, or comaker are contribution, reimbursement, and subrogation. The right that applies in a particular situation will depend on the agreement between the debtor and the codebtor.

H.R. Rep. No. 95-595 at 358 (1977). Without section 509, if a debtor received a discharge and if a codebtor paid a claim postpetition, any claim for contribution, reimbursement, or subrogation would be discharged and would leave the codebtor with no means of recovery. *See* 11 U.S.C. § 727(b); *see also* S. Rep. 95-989 at 73-74; H.R. Rep. No. 95-595 at 358-59. Thus, section 509 acts as a narrow, equitable backstop to ensure that a codebtor will receive some distribution (specifically the original creditor's distribution) from the debtor's estate if the codebtor pays a creditor's claim. When a guarantor makes its payment prepetition no such

15

backstop is needed since the guarantor can proceed as a creditor in its own right under sections 501 and 502. *See Matter of Corland Corp.*, 967 F.2d at 1078 ("§ 509's right of subrogation has meaning *only* if the payment is made postpetition . . .") (emphasis in original). Any subrogation rights that a guarantor might exercise would arise from a subrogation agreement with the debtor or from a state law equitable subrogation claim.

In the present case, the Huntington loan was paid prepetition, in 2004. Thus, Prim is not subrogated to the rights of Huntington under section 509. Prim has made no allegation of a subrogation agreement between itself and the debtor or between any of Prim's principals and the debtor. Nor has Prim advanced any argument or facts supporting an equitable subrogation claim under Ohio law.[4] Therefore, Prim is not subrogated to the rights of Huntington and must establish its nondischargeability claims in its own right.

### 2. Prim's Reliance on the Financial Statements

Subsection 523(a)(2)(B)(iii) requires reasonable reliance by the creditor upon the alleged false statement. There is no genuine issue of material fact

---

[4]Several courts have held that equitable subrogation is not applicable to bankruptcy but that section 509 provides the exclusive grounds for subrogation. Because Prim has not advanced any argument or facts supporting an equitable subrogation claim, the Court does not reach this question. *See generally* 4 Collier on Bankruptcy ¶ 509.08.

regarding Prim's reliance on the financial statements. First, Prim does not allege that it or any of its officers relied upon or even saw financial statements given to Huntington. Second, it is undisputed that May did not receive any salary while acting as Prim's General Counsel. Third, it is undisputed that May did not receive salary while associated with the DKW law firm. Fourth, Prim and Lombardo *knew* that May was earning no salary from either Prim or DKW, and Lombardo states that there was no obligation on either Prim's or DKW's part to refer any legal business to May. Finally, it is undisputed that the second loan was made *precisely because* May did not have sufficient income to repay the first loan. Thus, viewing the evidence in a light most favorable to Prim, the Court must conclude that Prim could not have reasonably relied on the financial statements that would otherwise indicate that May would have no difficulty repaying the loan.[5]

### C. 11 U.S.C. § 523(a)(6)

Prim also claimed that May's debt was nondischargeable under 11 U.S.C. § 523(a)(6), which excepts from discharge any debt "for willful and malicious

---

[5] Indeed, all of the facts in the record indicate that Huntington did not rely on the financial statements either. Huntington required the personal guarantees of several Prim officers, the guarantee of Prim itself, and required a mortgage by one of the Prim guarantors. Such guarantees and security indicate no reliance on the financial statements, and Prim offered no evidence of Huntington's reliance. Thus, viewing the evidence in a light most favorable to Prim, Huntington did not rely on the financial statements.

injury by the debtor to another entity or to the property of the entity." Prim has neither alleged any facts nor presented any evidence in support of this claim. Accordingly, May's motion for summary judgment is granted as to this claim as well.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment is granted.

IT IS SO ORDERED.

Arthur I. Harris
United States Bankruptcy Judge